# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
November 12, 2015
Lyle W. Cayce
Clerk

No. 15-60112

RAMSAY SCARLETT & COMPANY; LIBERTY MUTUAL INSURANCE COMPANY,

      Petitioners

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

      Respondent

FERDINAND J. FABRE, JR.,

      Claimant - Respondent

Petition for Review of an Order
of the Benefits Review Board

Before OWEN, GRAVES, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

      Ramsay Scarlett, the former employer of Ferdinand Fabre, age sixty-four, appeals the Benefits Review Board's affirmance of the Administrative Law Judge's order holding Ramsay Scarlett liable for medical expenses attributable to Fabre's asbestosis, under the Longshore Harbor Worker's Compensation Act, 33 U.S.C. §§ 901–950. We AFFIRM.

No. 15-60112

BACKGROUND

Claimant Ferdinand Fabre was employed by Ramsay Scarlett from 1969 to 1991. During that time, Fabre primarily worked at the Port of Baton Rouge, though between approximately 1972 and 1976, he worked at a storage facility known as Sharp Station. *Id.* It is undisputed that Sharp Station is not a covered situs under the Longshore Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–950; *see New Orleans Depot Servs., Inc. v. Dir., Office of Worker's Comp. Programs*, 718 F.3d 384, 393–94 (5th Cir. 2013). Similarly, the parties do not dispute that the Port of Baton Rouge is a covered situs under the LHWCA. From 1991 to 2013, Fabre was employed by Westway, an employer also covered by the LHWCA and located at the Port of Baton Rouge.

The parties agree that Fabre was diagnosed with asbestosis in 2011. Fabre contends that he was exposed to asbestos while working for Ramsay Scarlett at both Sharp Station and the Port of Baton Rouge. The parties do not dispute that Fabre was exposed to asbestos while working at Sharp Station. Fabre alleges that, while working for Ramsay Scarlett at the Port of Baton Rouge, he was exposed to asbestos while changing the brakes and clutches of several types of equipment. Alleging that these conditions caused his asbestosis, Fabre filed a claim for medical benefits under the LHWCA on December 28, 2011. The Administrative Law Judge ("ALJ") issued a nineteen-page decision and order on September 10, 2013. After finding that Fabre established a prima facie case of coverage under the LHWCA, that Ramsay Scarlett did not rebut that case, and that Ramsay Scarlett was the last maritime employer, the ALJ ordered Ramsay Scarlett to pay for all "reasonable and necessary medical expenses arising out of [Fabre's] work-related occupational disease pursuant to 33 U.S.C § 907." Ramsay Scarlett appealed the ALJ's ruling, and on September 25, 2014, the Benefits Review Board

("BRB") affirmed the ALJ's decision and order. Ramsay Scarlett timely appealed.

## DISCUSSION

### I.

We review decisions by the BRB only to determine whether it adhered to the proper scope of review—whether the ALJ's findings were supported by substantial evidence and were consistent with the law. *Ceres Gulf, Inc. v. Dir., Office of Worker's Comp. Programs*, 683 F.3d 225, 228 (5th Cir. 2012). Substantial evidence is "that relevant evidence—more than a scintilla but less than a preponderance—that would cause a reasonable person to accept the fact finding." *Id.* (citation omitted). Importantly, the ALJ remains the sole fact finder and must make all credibility determinations. *Id.* The BRB correctly cited this standard articulated in our case law.

### II.

Under the LHWCA, the claimant establishes a prima facie case for coverage by showing that (1) a harm occurred and (2) the harm may have been caused or aggravated by a workplace condition. *Ceres Gulf, Inc.*, 683 F.3d at 229. If the claimant establishes these elements, a presumption arises that the claim falls under the LHWCA. *Id.*; 33 U.S.C. § 920(a). The burden then shifts to the employer to rebut the presumption "through facts—not mere speculation—that the harm was not work-related." *Ceres Gulf, Inc.*, 683 F.3d at 229 (citation omitted). This burden can be met by showing that working conditions did not cause the harm or that the employee was exposed to the same working conditions at a subsequent covered employer. *Avondale Indus., Inc. v. Dir., Office of Workers' Comp. Programs*, 977 F.2d 186, 190 (5th Cir. 1992). If the ALJ finds that the employer rebutted the presumption, then the ALJ must weigh all of the evidence to determine whether the harm was caused by the claimant's employment at the covered situs. *See Ceres Gulf, Inc.*, 683

F.3d at 229. We hold that the BRB correctly held that the ALJ properly applied the LHWCA's burden-shifting framework and relied on substantial evidence when making his findings at each step.

Ramsay Scarlett first argues that Fabre's prima facie case is unsubstantiated because there was not substantial evidence to establish that Fabre was exposed to asbestos at the Port of Baton Rouge. When determining that Fabre established a prima facie case, the ALJ relied on Fabre's explicit deposition testimony and the report of Frank Parker, an industrial hygienist. Fabre testified that during his tenure at the Port of Baton Rouge, he changed brakes and clutches on a variety of equipment, including cranes, that he believed "definitely had asbestos on them" because "most of the things at that time probably had asbestos in them." Fabre stated that the components did not have warning labels on them, that he often had to blow out dust when installing the components, and that at an unknown time he read that these components contained asbestos. In his report, Parker reviewed Fabre's work history and concluded that Fabre was first exposed to asbestos at Sharp Station in the early 1970s. Parker also concluded that Fabre's exposure to asbestos, while less, continued when he returned to the Port of Baton Rouge during the mid to late 1970s. Parker reported that during the time Fabre was employed by Ramsay Scarlett at the Port of Baton Rouge, he was exposed to asbestos because it was well documented that brakes and clutches, the components that Fabre handled, exposed workers to "significant concentrations of asbestos."

The ALJ credited the above-described evidence when finding that Fabre had met the low burden required to establish a prima facie case—that he suffered a harm that a workplace condition could have caused or aggravated. This evidence was more than a scintilla, and it might cause a reasonable

person to accept the ALJ's fact finding. *See Sonat Offshore Drilling v. Avondale Indus.*, 37 F. App'x 91, at *2 (5th Cir. 2002) (finding that the claimant's testimony and the testimony of one other employee was substantial evidence to justify a prima facie case); *see also Ingalls Shipbuilding, Inc. v. Dir., Office of Workers' Comp. Programs*, 991 F.2d 163, 165 (5th Cir. 1993) (defining substantial evidence as evidence that "a reasonable mind might accept as adequate to support a conclusion" (citation omitted)).

Ramsay Scarlett first attacks the credibility of Fabre's deposition testimony because his belief that he was exposed to asbestos arose only after he read a newspaper article describing the presence of asbestos in certain machinery. Ramsay Scarlett also contends that Fabre contradicted his assertions of exposure in two ways. Ramsay Scarlett points out that when Fabre was first diagnosed with asbestosis in 2011, he only mentioned his exposure at Sharp Station. Second, Ramsay Scarlett notes that Fabre did not feel the need to wear a protective mask at the Port of Baton Rouge, even though he wore one at Sharp Station. In addition to criticizing Fabre's statements, Ramsay Scarlett also criticizes Parker's report for failing to cite historical literature or other data and solely relying on the testimony of other longshoremen.

We have held that "under the [LHWCA], the ALJ, not the BRB, [is] entitled to assess the relevance and credibility of testimony, including expert testimony."[1] *Ceres Gulf, Inc.*, 683 F.3d at 229. The ALJ's reliance on Fabre's

---

[1] We have also held that "the formal rules of evidence do not apply in administrative proceedings but rather 'the admissibility of evidence depends on whether it is such evidence as a reasonable mind might accept as probative.'" *Atlantic Marine, Inc. v. Bruce*, 661 F.2d 898, 900 (5th Cir. Unit B 1981) (quoting *Young & Co. v. Shea*, 397 F.2d 185, 188 (5th Cir. 1968), *cert. denied*, 395 U.S. 920 (1969)). In addition, Ramsay Scarlett did not challenge the decision of the ALJ for relying on a fact unsupported by the record. 5 U.S.C. § 556 ("When

deposition testimony and Parker's report that was elaborated in five paragraphs of record analysis under the caption "weighing the evidence" demonstrates that the ALJ found this evidence relevant and credible. The ALJ's statement that Parker relied on "scientific literature, his education and experience, and information generally relied upon my [sic] members of his profession" also demonstrates that the ALJ regarded the expert testimony as reliable. Ramsay Scarlett's credibility attack on Fabre's deposition testimony and Parker's report therefore fails. *See Ceres Gulf, Inc.*, 683 F.3d at 228.

Ramsay Scarlett also challenges Fabre's prima facie case on the ground that Fabre's exposure to asbestos at the Port of Baton Rouge would have been *de minimis* compared to his exposure at other non-maritime settings, such as Sharp Station. However, "[t]he Fifth Circuit has . . . held that, regardless of the brevity of the exposure, if it has the potential to cause disease, it is considered injurious." *Avondale Indus.*, 977 F.2d at 190. As a result, this argument also fails. The BRB did not err in finding that substantial evidence supported the ALJ's conclusion that Fabre established the presumption of a LHWCA claim.

Ramsay Scarlett next argues that even if Fabre did establish a prima facie case, Ramsay Scarlett rebutted the presumption. To rebut the claimant's established presumption, Ramsay Scarlett must provide "factual doubt" and "substantial evidence to the contrary." *See Ceres Gulf, Inc.*, 683 F.3d at 231; *Ortco Contractors, Inc. v. Charpentier*, 332 F.3d 283, 287 (5th Cir. 2003). The only evidence that Ramsay Scarlett itself submitted on the causation issue was evidence that, by 1976, the Occupational Health and Safety Administration

---

an agency decision rests on official notice of a material fact not appearing in the evidence in the record, a party is entitled, on timely request, to an opportunity to show the contrary.").

6

had adopted regulations regarding asbestos, which would have greatly limited any exposure to asbestos. But, Ramsay Scarlett did not present any evidence that these asbestos regulations or any additional safety measures were ever implemented at the Port of Baton Rouge. In addition, Ramsay Scarlett did not present any evidence contradicting Fabre's deposition testimony and Parker's report that there was asbestos in the brakes and clutches Fabre changed. Therefore, a reasonable mind could accept that Ramsay Scarlett did not provide factual doubt as to whether the working conditions of the Port of Baton Rouge caused Fabre's asbestosis.

Ramsay Scarlett also argues that it rebutted the presumption by proving that Ramsay Scarlett was not the last covered maritime employer. Ramsay Scarlett contends that Fabre was exposed to asbestos at Westway, another covered employer and his only subsequent employer. *Id.* Again, to rebut the presumption, Ramsay Scarlett must put forth "substantial evidence to the contrary" and provide "factual doubt." *See Ceres Gulf, Inc.*, 683 F.3d at 231; *Ortco Contractors, Inc.*, 332 F.3d at 287.

Because Fabre testified that he worked around cranes, trucks, and other equipment while employed at Westway, Ramsay Scarlett contends that Fabre could have been exposed to asbestos at Westway. Ramsay Scarlett contends that if such proximity evidence is enough to establish a prima facie case for Fabre, it is enough to establish that Westway was the last covered employer. When concluding otherwise, the ALJ relied on Fabre's deposition testimony that at Westway he was not exposed to asbestos and that he did not change brakes and clutches, the same components that exposed him to dust at the Port of Baton Rouge. Ramsay Scarlett did not put forth any factual evidence that contradicted Fabre's testimony that he was not exposed to asbestos and did not change brakes and clutches at Westway. As a result, there was substantial

evidence for the ALJ to conclude that Ramsay Scarlett did not rebut the presumption of a valid LHWCA claim because it did not provide factual doubt.

III.

Ramsay Scarlett also challenges the affirmance of the ALJ's order requiring Ramsay Scarlett to reimburse Fabre for annual flu and pneumonia vaccines and the treatment of conditions including pneumonia and bronchitis. The LHWCA requires an employer to reimburse a claimant for all medical expenses that arise from a work-related injury and defines "injury" as a disease or infection that arises "naturally" out of the employment. 33 U.S.C. §§ 902, 907. We have held that "[a] subsequent injury is compensable if it is the direct and natural result of a compensable primary injury, as long as the subsequent progression of the condition is not shown to have been worsened by an independent cause." *Miss. Coast Marine, Inc. v. Bosarge,* 637 F.2d 994, 1000 (5th Cir. 1981). We apply a liberal causation standard when determining the coverage of initial and subsequent injuries. *Bludworth Shipyard, Inc. v. Lira*, 700 F.2d 1046, 1051 (5th Cir. 1983).

When determining coverage of Fabre's medical treatment, the ALJ relied on the deposition of Dr. Gomes, the doctor who diagnosed Fabre with asbestosis at age sixty, and who Fabre now sees for a yearly x-ray and pulmonary function test. In his deposition, Dr. Gomes testified that patients with asbestosis require yearly flu and pneumonia vaccines to prevent chest infections and that asbestosis increases the likelihood that one will develop pneumonia and bronchitis. In response, Ramsay Scarlett contends that Fabre did not establish a causal link between asbestos exposure and these respiratory infections. Specifically, Ramsay Scarlett points out that Fabre had a history of pneumonia before his asbestosis diagnosis. Ramsay Scarlett also asserts

that pneumonia is not always caused by asbestosis.[2] We defer to the ALJ's credibility determination and reliance on Dr. Gomes's testimony. *See Ceres Gulf, Inc.*, 683 F.3d at 228. Given the liberal causation standard, a reasonable mind could accept Dr. Gomes's testimony and "the common sense of the situation" as adequate to support the conclusion that these respiratory ailments are a natural result of asbestosis and that flu and pneumonia vaccines are necessary treatments for the disease. *See Atlantic Marine, Inc. v. Bruce*, 661 F.2d 898, 900 (5th Cir. Unit B 1981).

## CONCLUSION

For the forgoing reasons, we AFFIRM the BRB's affirmance of the ALJ's order.

---

[2] Ramsay Scarlett also contends that the causation standard for subsequent injuries is a higher burden than the ALJ applied, citing, *Amerada Hess Corp., et al. v. Director, Office of Worker's Comp. Programs*, 543 F.3d 755 (5th Cir. 2008). In *Amerada Hess*, we remanded the case for the ALJ to determine whether there was substantial evidence to conclude that a heart condition was the "natural and unavoidable" result of a back injury. 543 F.3d. at 760–62. However, the court's decision rested on the fact that there was no expert testimony linking the two conditions. *Id.* at 762 (stating "no qualified physician testified to [the] effect" that "such treatment is necessary for a work-related condition" and "[i]t appears to us that such a finding would benefit from, if not require, support of medical experts"). Conversely, in his deposition, Dr. Gomes directly linked asbestosis to the relevant respiratory conditions.